**Charles W. LUEBBERT and C.W. Luebbert Construction Co., Inc., Respondents,**

v.

**Mary L. SIMMONS, Appellant.**

**No. WD 60600.**

Missouri Court of Appeals, Western District.

Jan. 28, 2003.

Wm. N. Marshall III, Kansas City, MO, for Respondents.

Mark J. Bredemeier, Lee's Summit, MO, for Appellant.

Before ELLIS, C.J., and ULRICH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Respondent, Charles Luebbert, filed a three-count lawsuit against Appellant, Mary Simmons, in which he sought recovery on Count I for money due on a promissory note allegedly executed by Ms. Simmons and on Count II for a series of loans he allegedly made to Ms. Simmons. In Count III of the same suit, C.W. Luebbert Construction Company, Inc., of which Mr. Luebbert is president, sought recovery for labor and materials allegedly furnished by the company at Ms. Simmons' request for renovation of her lake home and boat dock.

The associate circuit division of the Jackson County Circuit Court subsequently entered judgment on Count I in favor of Mr. Luebbert. It entered judgment in favor of Ms. Simmons on the remaining two counts.

On appeal, Ms. Simmons brings two points challenging the trial court's judgment against her on Count I. First, she contends that the trial court erred in admitting secondary evidence of the alleged promissory note because the admission violated the best evidence rule. Second, she contends that the judgment is against the weight of the evidence and that the court misapplied Missouri contract law, because there was evidence that "the parties did not intend to enter into any agreement for Ms. Simmons' repayment of any 'loans.'" Neither Mr. Luebbert nor C.W. Luebbert Construction Company, Inc., appeal from the judgment entered against them on Counts II and III of the petition.

We affirm.

## Facts

Viewed in a light most favorable to the trial court's judgment, the evidence adduced at trial showed as follows: [1]

Mr. Luebbert and Ms. Simmons, who both lived in homes on Lake Lotowana in Jackson County, Missouri, began dating in the fall of 1994. In March of 1995, Ms. Simmons arranged to rent her lake home to Royals' manager Bob Boone and moved with her two daughters into Mr. Luebbert's lake home. At this time, Ms. Simmons was in the middle of a divorce and had filed for bankruptcy. Thus, Ms. Simmons often borrowed money from Mr. Luebbert during their relationship. She occasionally paid him back from the commissions she received as a real estate agent. Nonetheless, Mr. Luebbert repeatedly reminded her of the money she owed him.

One March evening, as they sat having drinks on Mr. Luebbert's deck overlooking the lake, Ms. Simmons, using a fill-in-the-blank form, sloppily wrote Mr. Luebbert a promissory note stating that she owed him $12,200 "at 10% due by Dec[ember] 30, 1995." Shortly thereafter, on March 29, 1995, she gave him a second, more-legible

---

1. Because neither Mr. Luebbert nor Luebbert Construction appeal from the trial court's entry of judgment in Ms. Simmons' favor on Counts II and III of his petition, we discuss only the evidence relevant to Ms. Simmons' appeal from the judgment on Count I of the petition.

promissory note, which, except for the better handwriting, did not vary from the first note she had written. Mr. Luebbert never received payment on the note.

Ms. Simmons and her daughters moved out of Mr. Luebbert's home on June 1, 1995. At this time, she wrote two post-dated $1,000 checks to Mr. Luebbert. Because they remained friends after she moved out, Mr. Luebbert repeatedly honored her request that he hold off on cashing the checks. When he finally did try to cash them, payment had been stopped on the checks.

Mr. Luebbert first filed suit against Ms. Simmons in 1996. He voluntarily dismissed the case without prejudice in 1997. He filed this second suit on December 13, 1999. Upon Mr. Luebbert's motion, the case was transferred to the associate circuit division of the Jackson County Circuit Court.

A one-day trial to the court was had on August 10, 2001. Mr. Luebbert based his first claim upon Ms. Simmons' execution of the second promissory note. Before any evidence was presented at the trial, Ms. Simmons' counsel filed and argued a motion in limine, seeking to preclude admission of a photocopy of the second promissory note. After hearing both parties' arguments, the trial court took the motion with the case. When Mr. Luebbert attempted to introduce the photocopy of the second note into evidence as "Plaintiff's Exhibit No. 1," Ms. Simmons' counsel again objected on the same grounds now argued on appeal. The trial court explained that it was "going to allow [counsel's] objection to go to the weight to be given the evidence" and admitted the document. After Mr. Luebbert and Ms. Simmons testified and counsel presented clos-

ing argument to the court, the trial court took the case under advisement.

On September 10, 2001, the court entered judgment against Ms. Simmons on Count I of Mr. Luebbert's claim in the sum of $12,200, plus interest of $8,153.13, plus costs. It entered judgment in her favor on the remaining two counts. This appeal follows.

## Standard of Review

■ Our review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or it erroneously declares or applies the law, we will affirm. Because the trial court made no specific findings and none were requested by the parties, pursuant to Rule 73.01,[2] we shall consider "[a]ll fact issues upon which no specific findings are made ... as having been found in accordance with the result reached."

## Point I

In her first point on appeal, Ms. Simmons challenges the trial court's admission of a photocopy of the second promissory note. She contends the admission of the document violated the best evidence rule "in that the evidence showed that the original note was sloppy and illegible and would have evinced proof that Appellant was intoxicated when the original note was prepared."

■ As this court explained in *Student Loan Marketing Ass'n v. Holloway*, 25 S.W.3d 699, 705 (Mo.App. W.D.2000): "The [best evidence] rule stated is this: in proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown

**2.** Rule references are to the Missouri Rules of Civil Procedure (2001).

to be unavailable for some reason other than the serious fault of the proponent." If the original document is required under the rule, "[a] photocopy as secondary evidence is admissible if there is a foundation showing that: '(1) the original is unavailable, (2) the unavailability is not the proponent's fault, and (3) the secondary evidence is trustworthy.'" The best evidence rule applies only when the terms of the writing itself are in dispute, not simply because a witness with personal knowledge testifies concerning facts also contained in a writing. "[W]hen complaints concerning ... the 'best evidence rule' are urged, the trial court's broad discretion is subject to reversal only in cases of clear abuse."

(Citations omitted.)

■ Thus, we must first consider whether the terms of the promissory note are in dispute. The essential terms of the second promissory note admitted at trial are that Ms. Simmons promised to pay Mr. Luebbert $12,200 at 10% interest per annum beginning January 3, 1995. Although she contests the admission of the photocopy of the second promissory note, her testimony at trial reveals that the terms of the second note did not vary from those of the first, which she did not dispute. The following exchange between Ms. Simmons and Mr. Luebbert's counsel during cross-examination demonstrates this fact:

Q: [Counsel] And the terms of the promissory note that you wrote, although it was kind of sloppy, was that you were to owe Charles Luebbert $12,200 payable at 10 percent interest per annum beginning January 3, 1995; is that correct?

A: [Ms. Simmons] It was a joke. I mean, it was a laughing—

Q: Ma'am, my question is, those were the terms of that note, isn't that correct?

A: I think so. I don't—I don't remember the terms.

Q: You don't remember the terms?

A: I'm not sure. I—I said that before. I'm not sure that that's what it said. I think that's right.

Although her response may be viewed as somewhat equivocal, when considered in light of Mr. Luebbert's testimony that Ms. Simmons insisted on giving him the second promissory note—the terms of which were identical to the first note in all respects, except that the handwriting was more clear—it becomes evident that the terms of the second note, which the trial court admitted a photocopy of, were not in dispute. Rather than challenge the terms of the note, Ms. Simmons' arguments focus on her intent in executing the promissory note, which we address in our discussion below of her second point on appeal. Because the terms of the note admitted at trial are not in dispute, the best evidence rule does not apply. *Id.* Thus, we cannot say that the trial court abused its discretion in admitting Plaintiff's Exhibit No. 1.

■ In fact, even assuming, for argument purposes, that the best evidence rule did apply to the admission of the second promissory note, Mr. Luebbert laid a sufficient foundation for admission of the photocopy of the second promissory note. Mr. Luebbert testified that the originals of the first promissory note and second promissory note had been lost through no serious fault of his own after several different attorneys reviewed the matter. The file box sat in various offices, and somewhere along the way, the originals were lost. He explained that both he and the several lawyers who reviewed the case had made multiple copies of the original second promissory note, and the photocopy sought to be admitted as his first exhibit was "absolutely" a true and accurate photocopy of the original of the second promissory

note that was delivered to him by Ms. Simmons.

With regard to the trustworthiness of the photocopy of the second promissory note, although Ms. Simmons claimed at trial that she never executed the second promissory note, Mr. Luebbert testified that she did and that the second promissory note was identical to the first note in all respects, except that the handwriting was more clear. Also, the photocopy of the second note was attached as Plaintiff's "Exhibit A" to his petition. Ms. Simmons admitted in her answer to Count I of Mr. Luebbert's petition that "she signed the document set forth as Exhibit A to the Petition, but [she] denie[d] its legitimacy." She cannot then deny that it is her signature on the photocopy of the note. *See Ferrier–Harris, Ltd. v. Sanders*, 905 S.W.2d 123, 125 (Mo.App. E.D.1995) (explaining that "[s]ince allegations in a petition, admitted in an answer, are judicial admissions, they are taken as true").

■ The trial court was free to believe Mr. Luebbert's testimony concerning the trustworthiness of the photocopy of the second promissory note and was likewise free to disbelieve Ms. Simmons' testimony to the contrary. We defer to the trial court on determinations of witness credibility. *Lancaster v. Neff*, 75 S.W.3d 767, 772 (Mo.App. W.D.2002). Mr. Luebbert showed that (1) the original of the second promissory note was unavailable, (2) the unavailability was not due to his serious fault, and (3) the secondary evidence is trustworthy. *Holloway*, 25 S.W.3d at 705. Thus, even if we were to find that the best evidence rule applies, the trial court did not abuse its discretion in admitting the photocopy of the second promissory note.

Point I is denied.

## Point II

■ In her second point on appeal, Ms. Simmons contends that the trial court erred in entering judgment against her on Mr. Luebbert's promissory note claim. She contends that "such decision is against the weight of the evidence and misapplied Missouri Contract law in that the evidence showed that the parties did not intend to enter into any agreement for [her] repayment of any 'loans.' "

■ "A promissory note is a written contract for the payment of money." *Merz v. First Nat'l Bank*, 682 S.W.2d 500, 501 (Mo.App. E.D.1984). "The basic elements of a contract are offer, acceptance and consideration." *Beck v. Shrum*, 18 S.W.3d 8, 10 (Mo.App. E.D.2000). In support of her contention that the parties did not intend to enter into an agreement for her to repay any supposed loans made to her by Mr. Luebbert, Ms. Simmons cites *Klamen v. Genuine Parts Co.*, 848 S.W.2d 38, 40 (Mo.App. E.D.1993), and *New Medico Associates, Inc. v. Snadon*, 855 S.W.2d 489, 491 (Mo.App. S.D.1993), for the general requirement a valid contract requires a "meeting of the minds," characterized by the objective manifestations of the parties through expressed promises, and a showing that the parties have assented to all essential terms. She then argues that "[t]he overwhelming evidence in this case showed that [she] did not seriously intend to accept a loan repayment obligation for the arbitrary amount of $12,200." In support of her argument, she complains that Mr. Luebbert did not successfully explain how the arbitrary $12,200 figure coincided with any alleged loans he made to her.

■ In cases such as this, a party's intent to form a contract "is usually established by circumstantial evidence," so we consider the evidence offered at trial. *Doss v. EPIC Healthcare Mgmt. Co.*, 901 S.W.2d 216, 220 (Mo.App. S.D.1995). Al-

though Ms. Simmons testified that she was drunk and just joking around when she jokingly filled the first promissory note out for $12,200, Mr. Luebbert's testimony demonstrated otherwise. With the aid of his supporting Exhibits 17 through 24,[3] Mr. Luebbert itemized for the court the loans that he had made to Ms. Simmons and money she had paid him back. He insisted that each time he loaned her money to help her out, it was with the understanding that she would pay him back. His itemization demonstrated that she owed him $12,200—the amount of the promissory note. Mr. Luebbert also testified that the note came into being after he had begun to question Ms. Simmons concerning when she was ever going to repay him. He explained that Ms. Simmons insisted on giving him the promissory note because she had promised to pay him back the money he loaned her.

With regard to Ms. Simmons' insistence that they were both drunk, Mr. Luebbert testified that, although they had been drinking, neither of them were drunk at the time. In fact, Ms. Simmons also testified that she was not so drunk at the time that she could not recall what happened. *See Lucy v. Zehmer*, 196 Va. 493, 84 S.E.2d 516, 520 (1954) (wherein the defendant insisted that no valid contract had been formed to sell his property to plaintiff because he was intoxicated, and he had only entered into the contract, which the parties had handwritten on the back of a restaurant guest check, as a joke. Citing 17 C.J.S. *Contracts* § 133, the court found that "[t]he record is convincing that [Defendant] was not intoxicated to the extent of being unable to comprehend the nature and consequences of the instrument he executed, and hence that instrument is not to be invalidated on that ground.").

With regard to Ms. Simmons's insistence that the promissory note was just a joke, Mr. Luebbert said otherwise. He loaned her the money and expected her to pay it back, and she filled out the promissory note in response to his insistence that she do so. *Lucy v. Zehmer* is also instructive on this claim that the promissory note was a joke; the court explains:

An agreement or mutual assent is of course essential to a valid contract but the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. If his words and acts, judged by a reasonable standard, manifest an intention to agree, it is immaterial what may be the real but unexpressed state of his [or her] mind.

So a person cannot set up that he was merely jesting when his conduct and words would warrant a reasonable person in believing that he intended a real agreement.

*Id.* at 522 (citing 17 C.J.S. *Contracts* §§ 32 and 47, 12 Am.Jur. *Contracts* § 19, and Clark on Contracts, § 27, p. 515 (4th ed.1931)); *see also* 17A Am.Jur.2d *Contracts* §§ 26 through 28 (1991) (discussing the necessity of mutual assent and intention to contract). Ms. Simmons' conduct and insistence that she would pay Mr. Luebbert back after he questioned her about the money he loaned her suggest that she intended a real agreement.

This was a credibility call, and the trial court was free to believe Mr. Luebbert's account of these dealings. The trial court's finding that Ms. Simmons had the necessary intent in signing the promissory note and that she was bound thereby is supported by Mr. Luebbert's testimony, supporting documentation, and other cir-

---

**3.** These exhibits are not a part of the record on appeal.

cumstantial evidence; it is not against the weight of the evidence.

Point II is denied.

## Conclusion

The trial court did not err in admitting the photocopy of the second promissory note over Ms. Simmons' best evidence objection, nor did it err in rendering judgment in Mr. Luebbert's favor on his promissory note claim. Accordingly, we affirm the judgment.

ELLIS, C.J., and ULRICH, J., concur.